IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| WALTER BRUCE CORNET, | § | |
| TDCJ # 1553441, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | EP-15-CV-251-DB |
| | § | |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Walter Bruce Cornet, a state prisoner released on parole, seeks relief from his convictions in the 384th District Court, El Paso County, Texas, on two counts of aggravated sexual assault of a child through a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1).[1] In his answer (ECF No. 10), Respondent William Stephens asserts "Cornet's habeas petition should be denied because claims presented are meritless and fail to overcome [the Antiterrorism and Effective Death Penalty Act's] deferential standard of review."[2] After reviewing the record and for the reasons discussed below, the Court finds that Cornet is not entitled to federal habeas relief. Accordingly, the Court will deny his petition and, additionally, deny him a certificate of appealability.

### BACKGROUND AND PROCEDURAL HISTORY[3]

In June 2006, Cornet's eight-year-old stepdaughter reported to a forensic interviewer that Cornet had made oral contact with her anus. She further claimed that Cornet had, on one occasion, shown her various "sex toys" and that he had placed one between her legs so that she

---

[1] *See State v. Cornet*, No. 20060D03223 (384th Dist. Ct., El Paso Cnty., Tex. Jan 16, 2009), *aff'd*, 417 S.W.3d 446 (Tex. Crim. App. 2013).
[2] Resp't's Resp. at 1, ECF No. 10.
[3] *See Cornet*, 417 S.W.3d at 448–49 (summarizing the facts in the case).

could "feel the vibration."[4]

When Cornet learned of his stepdaughter's allegations, he voluntarily participated in a non-custodial interview with Detective Jaime Terrazas from the El Paso County Sheriff's Office.[5] Cornet explained that in March 2006, his stepdaughter entered his bedroom, lifted her dress, and exposed herself. Cornet added that because she covered her genital area with her hand, he decided to examine her for physical evidence of sexual contact or injury. Cornet said he laid his stepdaughter on the bed on her stomach, spread her legs, and opened her buttocks to visually check her anus and labia. Cornet described how he spread her labia with his fingers to determine whether her hymen was intact, but reported his examination was inconclusive. He defended his action by claiming he did not examine his stepdaughter for his sexual gratification.

As a result of these statements, a grand jury charged Cornet with three counts of aggravated sexual assault of a child, in violation of Texas Penal Code §§ § 22.021(a)(1)(B)(i), 22.021(a)(1)(B)(iv), and (a)(2)(B). Count one alleged that Cornet caused the penetration of his stepdaughter's vagina with his finger, count two alleged that he caused the penetration of her anus with his finger, and count three alleged that he caused her anus to come into contact with his mouth.

At his trial, Cornet recounted his written statement about the March 2006 incident, but added that he initially saw his stepdaughter masturbating in her room and told her to stop. He said he went into his own room, and shortly thereafter, heard a knock on his door. He claimed his stepdaughter entered his room wearing a dress, lifted it to expose her naked bottom, and told him that he could lick it. Cornet denied placing his tongue on her anus or placing his finger in her vagina. He also stated he would never molest a child and that any type of sexual activity with a child is wrong. Cornet claimed—in what he described as an attempt to obtain his stepdaughter's

---

[4] *Cornet v. State*, 359 S.W.3d 217, 218 (Tex. Crim. App. 2012).
[5] Pet'r's Mem. in Supp., Ex. 1, pp. 37–39 (Voluntary Statement), ECF No. 1-1.

confidence to talk to him about whether she had been sexually touched by others—he made a bargain with her. According its terms, his stepdaughter would tell him if anyone touched her in exchange for him showing her his sex toys. Cornet claimed she confided to him that someone had "licked her pee-pee" after he showed her the toys.[6]

During Cornet's trial, the court granted his defense counsel's motion for a directed verdict as to count two of the indictment, which charged Cornet with the digital penetration of his stepdaughter's anus. The jury then found Cornet guilty on counts one and three, which charged him the digital penetration of his stepdaughter's genitals and making oral contact with her anus. On January 20, 2009, the trial court sentenced Cornet—in accordance with the jury's punishment verdicts—to ten years in prison for each count, with the sentences running concurrently.

The Court of Appeals for the Eighth District of Texas affirmed Cornet's convictions, but the Texas Court of Criminal Appeals reversed on discretionary review for a harmless error analysis.[7] On remand, the Court of Appeals again affirmed the convictions, and the Court of Criminal Appeals affirmed the Court of Appeals' decision on November 6, 2013.[8]

Cornet filed a state habeas application challenging his convictions on August 11, 2014. The Texas Court of Criminal Appeals denied the application without written order on April 15, 2015.[9]

Cornet maintains in his federal petition that he is "actually innocent" of the charges brought against him "based . . . on newly discovered evidence" and "constitutional error at trial."[10] Cornet claims (1) the prosecutor withheld exculpatory evidence that the victim recanted her

---

[6] *Cornet*, 417 S.W.3d at 449.
[7] *Cornet v. State*, No. 08-09-00054-CR, 2010 WL 2396799 (Tex. App.—El Paso June 16, 2010, pet. granted) (not designated for publication), *rev'd* 359 S.W.3d 217 (Tex. Crim. App. 2012).
[8] *Cornet v. State*, No. 08-09-00054-CR, 2012 WL 5359233 (Tex. App.—El Paso Oct. 31, 2012, pet. granted) (not designated for publication), *aff'd* 417 S.W.3d 446 (Tex. Crim. App. 2013).
[9] *Ex parte Cornet*, WR-82,156-01 (Tex. Crim. App. Apr. 15, 2015).
[10] Pet'r's Mem. in Supp. 2–3.

statement before trial, (2) the trial court abused its discretion when it allowed Detective Terrazas[11] to testify after Cornet established that the El Paso County Sheriff's Department had disciplined and demoted him for not following police procedures, for altering statements of suspects, and for failing to disclose exculpatory evidence;[12] (3) the trial court wrongfully influenced the jury by threatening to sequester it if it did not reach a verdict that same day; (4) the prosecution exhibited a pattern of misconduct, which included a misstatement of the law and a false statement concerning Cornet living next to a known sex offender, which was aggravated by the trial court's abuse of discretion; (5) defense counsel provided constitutionally ineffective assistance when he failed to challenge the indictment,[13] move to suppress Cornet's statement to Terrazas, or ask for a mistrial; and (6) the trial court erred when it imposed multiple punishments for a what amounted to a single offense. Cornet asks the Court to vacate the judgments of conviction.

Cornet also raised these issues in his state application for a writ of habeas corpus, WR-82,156-01, which the Texas Court of Criminal Appeals denied.

## APPLICABLE LAW

In the federal judicial system, "collateral review is different from direct review," and the writ of habeas corpus is "an extraordinary remedy," reserved for those petitioners whom "society has grievously wronged."[14] It "is designed to guard against extreme malfunctions in the state criminal justice system."[15] It provides an important, but limited, examination of an inmate's conviction and sentence.[16] As a result, the federal habeas courts' role in reviewing state prisoner petitions is exceedingly narrow. "Indeed, federal courts do not sit as courts of appeal and error for

---

[11] *Id.*, Ex. 1, pp. 37–39 (Voluntary Statement).
[12] *Id.*, Ex. 9 pp. 292–306, (Case Summary Re: Detective Jaime Terrazas).
[13] *Id.*, Ex. 1, pp. 33–34 (Def.'s Mot. to Dismiss).
[14] *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993).
[15] *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)).
[16] *See Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions.").

state court convictions."[17] They must generally defer to state court decisions on the merits,[18] and on procedural grounds.[19] They may not grant relief to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present.[20]

A federal court can only grant relief if "the state court's adjudication of the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law,'"[21] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[22] The focus of this well-developed standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[23] Moreover, the federal court's focus is on the state court's ultimate legal conclusion, not whether the state court considered and discussed every angle of the evidence.[24] Indeed, state courts are presumed to "know and follow the law."[25] Factual findings, including credibility choices, are entitled to the statutory presumption, so long as they are not unreasonable "in light of the evidence presented in the State court proceeding."[26] Further, factual determinations made by a state court enjoy a presumption of correctness which the petitioner can rebut only by clear and convincing evidence.[27] This presumption of correctness applies not only to express findings of fact, but also to

---

[17] *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).
[18] *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).
[19] *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).
[20] *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).
[21] *Berghuis v. Thompkins*, 560 U.S. 370, 378 (2010) (quoting 28 U.S.C. § 2254(d)(1)).
[22] 28 U.S.C. § 2254(d)(2) (2012).
[23] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).
[24] *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc); *see also Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) ("we review only the state court's decision, not its reasoning or written opinion").
[25] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).
[26] 28 U.S.C. § 2254(d)(2) (2012).
[27] *Id.* § 2254(e)(1); *see Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006) (noting that a state court's determination under § 2254(d)(2) is a question of fact).

"unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."[28] In sum, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."[29] "If this standard is difficult to meet, that is because it was meant to be."[30]

## ANALYSIS

### A. Failure to Disclose Favorable Evidence

In his first claim for relief, Cornet alleges the State committed a *Brady* violation by failing to disclose favorable evidence. Specifically, he claims the prosecutor failed to disclose that the victim had "recanted" her accusations during two pretrial interviews.[31] He adds in his traverse to Respondent's answer that the "recantations came the day before trial began," and maintains he only "learned about the recantations on the third and last day of trial."[32]

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[33] The Supreme Court subsequently held that the duty to disclose favorable evidence applies even when the accused has not requested the information,[34] and it has expanded the duty to encompass impeachment evidence as well as exculpatory evidence.[35] Additionally,

---

[28] *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).
[29] *Harrington*, 562 U.S. at 102–03 (quoting *Jackson*, 443 U.S. at 332, n.5).
[30] *Id.* at 102.
[31] Pet'r's Mem. in Supp. 3–10.
[32] Pet'r's Traverse 1, ECF No. 16. *See Pierre v. Vannoy*, 891 F.3d 224, 225 (5th Cir. 2018), *as revised* (June 7, 2018) ("We have observed that 'clearly established Supreme Court precedent demands proof that the prosecution made knowing use of perjured testimony' to establish a constitutional violation.") (quoting *Kinsel v. Cain*, 647 F.3d 265, 272 & n.26 (5th Cir. 2011) (emphasis added).
[33] *Brady*, 373 U.S. at 87.
[34] *United States v. Agurs*, 427 U.S. 97, 107 (1976).
[35] *United States v. Bagley*, 473 U.S. 667, 676 (1985).

the rule includes evidence "known only to police investigators and not to the prosecutor."[36] Consequently, in order to comply with *Brady*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."[37]

To establish a *Brady* violation, a habeas petitioner has the burden of proving (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material either to guilt or punishment, and (4) the alleged favorable evidence was not discoverable through due diligence.[38] Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."[39] A *Brady* claim only encompasses "the discovery of information which had been known to the prosecution but unknown to the defense."[40] "Under *Brady*, the prosecution has no obligation to produce evidence or information already known to the defendant, or that could be obtained through the defendant's exercise of reasonable diligence."[41]

The record shows that the attorney assigned to protect the victim's interest and who was present at both pretrial interviews—Luis Gutierrez—informed Cornet's defense counsel that the victim had recanted her statement.[42] Indeed, Cornet's counsel told the judge during Cornet's trial that the victim "has made statements that she did recall that nothing happened."[43] Also, Cornet's counsel was permitted to question the victim about her recollections of the incident during the

---

[36] *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).
[37] *Id.* at 437.
[38] *Brady*, 373 U.S. at 87; *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997).
[39] *Bagley*, 473 U.S. at 682; see also *Kyles*, 514 U.S. at 433–434.
[40] *Agurs*, 427 U.S. 97, 107.
[41] *Castillo v. Johnson*, 141 F.3d 218, 223 (5th Cir. 1998).
[42] Trial Tr., vol. V, pp. 47–55, ECF No. 13-5.
[43] *Id.* at 48.

punishment phase of the trial.[44] While the victim testified that she did remember telling Gutierrez that Cornet "did not lick [her] butt," she claimed that—some three years after the incident—she could no longer remember anything else.[45]

Because Cornet's counsel knew that the victim could no longer recall the incidents, and because Cornet's counsel had a chance to use the information at trial, Cornet cannot meet his burden of showing the prosecution suppressed evidence and committed a *Brady* violation.[46]

Cornet also suggests that the victim's inability to remember violated his right to confrontation.[47] The United States Supreme Court and the Texas Court of Criminal Appeals have both rejected such claims.[48]

Ultimately, Cornet has failed to prove that the state court's rejection of his claim resulted in a decision which was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.[49] He has not shown "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[50] Consequently, Cornet is not entitled to relief on this claim.

## B. Permitting Detective Terrazas to Testify

In his second ground for relief, Cornet alleges that the trial court erred by allowing Detective Terrazas to testify when he had been disciplined and demoted for not following

---

[44] *Id.* at 55–56.
[45] *Id.*
[46] *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) ("Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence.").
[47] Pet'r's Mem. in Supp. 4, 6–7, 9.
[48] *United States v. Owens*, 484 U.S. 554, 559–60 (1988); *Woodall v. State*, 336 S.W.3d 634, 644 (Tex. Crim. App. 2011) (citing numerous cases and holding that "memory loss does not render a witness 'absent' for Confrontation Clause purposes if she is present in court and testifying.").
[49] 28 U.S.C. § 2254(d).
[50] *Richter*, 562 U.S. at 103.

procedures, altering statements of suspects, and for failing to disclose exculpatory evidence.[51] He suggests "Terrazas' demotion . . . [made] Petitioner's Custodial Statement involuntary, and therefore inadmissible a trial."[52]

Cornet's claim fails for three reasons. First, Cornet does not cite anything in the record to show his counsel ever objected to Detective Terrazas testifying. Cornet also fails to show his counsel argued any motions, other than a motion in limine, involving negative information about Detective Terrazas. And the discussion on the motion in limine was limited to whether the trial court would require Cornet's counsel to approach the bench before raising allegations of misconduct against Detective Terrazas:[53]

> MS. HAMILTON: It's a standard motion in limine. Detective Terrazas was under investigation at some point in time and Brady notice was sent out, you know, to all the defense attorneys. That investigation has been concluded. No charges are being filed. And so I told Charles [Roberts][54] - -
> THE COURT: You want him to approach?
> MS. HAMILTON: Yes.
> THE COURT: He's going to approach before he tries to get into it?
> MS. HAMILTON: Right.
> THE COURT: He has no problem?
> MS. HAMILTON: That was really all.[55]

Second, the introduction of evidence concerning the investigation, if admissible, would presumably be for impeachment purposes only, and would not prevent Detective Terrazas from testifying. Cornet fails to prove otherwise. Finally, there is nothing in the record which shows that Cornet's defense counsel tried to impeach Detective Terrazas with the allegations concerning his misconduct, or that evidence of his misconduct was even admissible.

---

[51] Pet'r's Mem. in Supp. 10–17.
[52] Pet'r's Traverse 5.
[53] *Id.* at 11.
[54] Charles Roberts served as Cornet's defense counsel.
[55] Trial Tr., vol II, pp. 206–07, ECF No. 13-2.

In sum, since Cornet's counsel did not object to Detective Terrazas testifying, the trial court did not have an opportunity to rule on an objection. As a consequence, Cornet cannot show the trial court erred when it permitted Detective Terrazas to testify.

Ultimately, Cornet's second claim also fails to overcome the Antiterrorism and Effective Death Penalty Act's deferential standard of review because he has not shown that the state courts' decision to deny relief on the claim was contrary to, or an unreasonable application of Supreme Court law. He is also not entitled to relief because he cannot show "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[56] Therefore, Cornet is not entitled to relief on this claim.

### C. Threatening to Sequester the Jury

Cornet contends the trial court improperly influenced jury deliberations during the guilt phase by threatening to sequester the members of the jury for four days if they did not reach a verdict.[57]

The record belies Cornet's claim. It shows that the jurors returned a guilty verdict at 3:34 p.m. on the afternoon on January 14, 2009.[58] The jurors then deliberated Cornet's punishment into the evening. When the jurors asked if they could assess punishment the following day, Cornet's counsel, Charles L. Roberts, asked the trial court to sequester the jurors:

> THE COURT: Let's talk about this. Mr. Roberts wants them sequestered. They have the absolute right to request that. The Court has absolutely no discretion to deny that motion. So [the jurors] want to make a decision tomorrow, so I will call them in and tell them they certainly have the right

---

[56] *Richter*, 562 U.S. at 103.
[57] Pet'r's Mem. in Supp. 17–18.
[58] Trial Tr., vol. V, pp. 1, 142, ECF No. 13-5.

to do so, but they need to start calling their families to get any kind of personal hygiene and/or other stuff they may need to spend the night at the Motel 6.

. . . .

We received a note from you at 5:55, Ms. Melzer -- the question: Can we make our decision tomorrow?

Is that your question? My question to you in response is: At this time are you close to reaching a verdict or are you going to need much more time?

FOREMAN: I think we're close.

THE COURT: Well, let me --

FOREMAN: Well, I mean --

THE COURT: Well, let me just say, I'm not trying to interfere with your decision, I'm not putting any pressure on you, that's your decision and you need to take it calmly and do it prudently.

You can make your decision tomorrow. However, I have no discretion, and I will have to, as you may be aware, sequester you. Which means that you cannot go home tonight. You will spend the night at the Camino Real Hotel. That's what I have to do, I have absolutely no leeway involved in this.[59]

The judge explained further that he wanted to sequester the jurors overnight so they would not make a hasty punishment determination just to get home.[60] The record contains no evidence that the judge ever threatened the jurors with sequestration for four days. The jury reached a punishment verdict the following morning, January 15, 2009.[61] Cornet's third claim fails on the facts contained in the record.

Moreover, Cornet again fails to overcome Antiterrorism and Effective Death Penalty Act's standard of review because he has not shown that the state court's decision to deny him relief on these claims was contrary to, or an unreasonable application of Supreme Court law. As a result, Cornet is not entitled to relief on this claim.

Finally, Cornet now claims he "misinterpreted and confused Guilt Phase with Punishment Phase, and therefore does not contest the Respondent's objection."[62]

---

[59] *Id.* at pp. 179–80.
[60] *Id.* at 179–84.
[61] Trial Tr., vol. VI, pp. 1, 4, ECF No. 13-6.
[62] Pet'r's Traverse 6.

### D. Prosecutorial Misconduct

Cornet next contends that the prosecutor engaged in misconduct by misstating the law—that the term "butt" meant the same thing as "anus"[63]—and by falsely suggesting that Cornet lived next to a known sex offender.[64] He adds that the trial judge's errors aggravated the prosecutorial misconduct.

When a court addresses a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[65] Even where the prosecutor's conduct is "undesirable or even universally condemned," it will not necessarily render the trial unfair.[66] As a result, the standard of review for a prosecutorial misconduct "claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"[67] In other words, a habeas petitioner must establish from the record "either persistent and pronounced misconduct" by the prosecutor or "that the evidence was so insubstantial, that but for these remarks, no conviction would have resulted."[68]

The record shows the prosecutor's alleged misconduct was neither persistent nor pronounced. Based on the substantial evidence presented against Cornet at trial, he cannot show that—absent the prosecutor's purported misstatements—the jurors would have found him not guilty. He is not entitled to relief on this claim.

---

[63] *Id.* *See* Tex. Pen. Code Ann. § 22.021 (West) (using the term "anus," not "butt").
[64] Pet'r's Mem. in Supp. 19–23.
[65] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).
[66] *Id.*
[67] *Id.* (quoting *Donnelly*, 416 U.S. at 642).
[68] *Felder v. Blackburn*, 795 F.2d 400, 403 (5th Cir. 1986).

Additionally, Cornet cannot show that the state court's determination of this issue conflicts with clearly established federal law, as determined by the Supreme Court, or "[is] based on an unreasonable determination of the facts in light of the evidence."[69] Cornet is not entitled to relief on this claim.

### E. Ineffective Assistance of Counsel

In his fifth claim for relief, Cornet alleges that his attorney rendered ineffective assistance by failing to file a pretrial writ challenging his arrest and indictment, and failing to move for a mistrial when the trial court allegedly abused its discretion:

> Defense counsel failed to submit a pretrial writ challenging the Petitioner's arrest and indictment because Detective Jaime Terrazas, had been disciplined and demoted for violating policies and procedures . . . . Defense counsel did not ask for a curative instruction to the jury after the trial court abused its discretion by not sustaining objection to ADA making a misstatement of law just before jury deliberations. Defense counsel did not object to ADA making an inadmissible and inflammatory statement to the jury that Petitioner "chose" to live next door to a known and convicted sex offender . . . . Defense counsel failed to adequately and effectively cross-examine and question former detective Terrazas . . . . Trial counsel should have preserved the error of the misstatement of law by following the proper procedure for objection; requesting a curative instruction, then moving for mistrial in order to preserve such error for appellate review.[70]

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel.[71] A court analyzes a defendant's claim that his counsel failed to provide effective assistance under the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[72] To prevail, a habeas petitioner must show (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance

---

[69] 28 U.S.C. § 2254(d).
[70] Pet'r's Mem. in Supp. 23–25.
[71] *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017).
[72] *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001).

prejudiced the defense.[73] The burden of proof is on the petitioner alleging ineffective assistance.[74] If the petitioner fails to prove one prong, it is not necessary to analyze the other.[75] A petitioner must show that his counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence.[76] "[S]econd-guessing is not the test for ineffective assistance of counsel."[77] "[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding."[78]

To demonstrate deficiency, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[79] Judicial scrutiny of counsel's performance is "highly deferential," with every effort made to avoid "the distorting effect of hindsight," and instead "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[80] As a consequence, federal habeas courts presume that counsel's choice of trial strategy is objectively reasonable, unless clearly proven otherwise.[81]

To demonstrate prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[73] *Strickland*, 466 U.S. at 689–94.
[74] *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).
[75] *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").
[76] *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).
[77] *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir. 1989).
[78] *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983).
[79] *Strickland*, 466 U.S. at 687.
[80] *Id.* at 689.
[81] *Id.*

different."[82] "That requires a substantial, not just conceivable, likelihood of a different result."[83] A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of *Strickland*.[84]

Furthermore, a federal habeas court must review a state petitioner's ineffective-assistance-of-counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d),"[85] and consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold."[86] Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."[87]

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.[88]

Cornet alleges his attorney rendered ineffective assistance when he failed to file a pretrial writ challenging his arrest and indictment based on Detective Terrazas's alleged misconduct. As the Court noted in subsection B above, Cornet's counsel could have used this negative information—at most—to impeach Detective Terrazas, but chose not to do so. Cornet further claims his counsel provided ineffective assistance by failing to ask for a curative instruction after the trial court purportedly abused its discretion by not sustaining counsel's objection to the

---

[82] *Porter v. McCollum*, 558 U.S. 30, 38–39 (2009) (internal quotation marks and citation omitted).
[83] *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)..
[84] *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).
[85] *Cullen*, 563 U.S. at 190.
[86] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).
[87] *Harrington*, 562 U.S. at 101.
[88] *Id.* at 105.

prosecutor making a misstatement of law just before jury deliberations. As the Court noted in subsection D above, Cornet cannot show—based on the substantial evidence presented against him at trial—that the jurors would have found him not guilty if the prosecutor had not made the purported misstatements.

Furthermore, Counsel's strategic choices, made after a thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable.[89] Cornet offers nothing—other than his conclusory assertions—to overcome the strong presumption in favor of finding that his counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. Cornet's conclusory statements also fail to affirmatively prove prejudice.[90] Therefore, Cornet cannot meet his burden of proof and show that his counsel's actions were either deficient or prejudicial.

More importantly, Cornet's ineffective-assistance-of-counsel claims fail to overcome Antiterrorism and Effective Death Penalty Act's deferential standard of review because he has not shown, or even attempted to show, that the state court's decision to deny him relief on these claims was contrary to, or an unreasonable application of Supreme Court law. He is also not entitled to relief because he cannot show "that the state court's ruling on the claim being presented in federal court [is] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[91] He is not entitled to relief on his ineffective-assistance-of-counsel claim.

---

[89] *Strickland*, 466 U.S. at 673; *Pape v. Thaler*, 645 F.3d 281, 289–90 (5th Cir. 2011).
[90] *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (citations omitted); *see also Ross v. Estelle*, 694 F. 2d 1008, 1011 (5th Cir. 1983).
[91] *Richter*, 562 U.S. at 103.

**F. Double Jeopardy**

Finally, Cornet contends that his two convictions for aggravated sexual assault of a child violate the Double Jeopardy Clause.[92]

The Fifth Amendment guarantee against double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."[93]

Here, the state court disposed of all the charges against Cornet in a single proceeding. Hence, neither of the first two protections of the Double Jeopardy Clause applies to his case.[94] Only the third protection is potentially applicable here.

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court set forth the test to determine whether the double jeopardy clause bars prosecution because a court may impose multiple punishments for the same offense. "If each different statutory offense requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes."[95] Thus, "[t]he *Blockburger* test has nothing to do with the evidence presented at trial. It is concerned solely with the statutory elements of the offenses charged."[96]

The indictment charged Cornet with three counts of aggravated sexual assault of a child. The trial court granted defense counsel's motion for a directed verdict as to count two. The jury

---

[92] Pet'r's Mem. in Supp. 25–27.
[93] *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).
[94] *Missouri v. Hunter*, 459 U.S. 359, 365–66 (1983).
[95] *United States v. Marden*, 872 F.2d 123, 125 (5th Cir. 1989) (citation omitted).
[96] *See Davis v. Herring*, 800 F.2d 513, 517 (5th Cir. 1986) ("the *Blockburger* test is to be applied to the elements of proof required by the statute and not to the actual evidence or proof adduced at trial in a given case.").

found Cornet guilty on the remaining two counts. Count one alleged a violation of Texas Penal Code § 22.021(a)(1)(B)(i). The version of this statute in effect at the time of the offense provided that "[a] person commits [aggravated sexual assault of a child] if the person intentionally or knowingly causes the penetration of the . . . sexual organ of a child by any means." Count three alleged a violation of Texas Penal Code § 22.021(a)(1)(B)(iv). The version of this statute in effect at the time of the offense provided that "[a] person commits [aggravated sexual assault of a child] if the person intentionally or knowingly causes the anus of a child to contact the mouth . . . of another person, including the actor." Thus, each statutory offense required proof of separate and distinct elements.

In this case, count one, which alleged a violation of Penal Code § 22.021(a)(1)(B)(i), required the State to prove that Cornet penetrated the sexual organ of his stepdaughter with his finger. Count three, which alleged a violation of Penal Code § 22.021(a)(1)(B)(iv), required the State to prove that Cornet caused his stepdaughter's anus to come into contact his mouth. The statutes describe two separate offenses each with distinct elements, which the State had to—and did—prove. Consequently, the *Blockburger* test is satisfied.

Under these circumstances, Cornet cannot show a violation of the Double Jeopardy Clause. As stated earlier, this Court may not grant habeas corpus relief unless it determines that the state court's determination was in conflict with clearly established federal law as determined by the Supreme Court or "was based on an unreasonable determination of the facts in light of the evidence."[97] Cornet has not made this showing. He is not entitled to relief on this claim.

---

[97] 28 U.S.C. § 2254(d).

## CERTIFICATE OF APPEALABILITY

A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[98] In cases where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[99] To warrant a grant of the certificate as to claims that the district court rejects solely on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[100]

In this case, Cornet has not made a substantial showing of the denial of a constitutional right. Thus, reasonable jurists could not debate the denial of Cornet's § 2254 petition, or find that the issues presented are adequate to deserve encouragement to proceed.[101] The Court shall not issue a certificate of appealability.

## CONCLUSIONS AND ORDERS

The Court accordingly concludes that Cornet is not entitled to § 2254 relief. The Court further concludes that Cornet is not entitled to a certificate of appealability. The Court, therefore, enters the following orders:

**IT IS ORDERED** that the Cornet's petition for a writ of habeas corpus (ECF No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED.**

---

[98] 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 132 S. Ct. 641, 646 (2012).
[99] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).
[100] *Id.*
[101] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

**IT IS ALSO ORDERED** that all pending motions are **DENIED.**

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

**SO ORDERED.**

SIGNED this 30th day of August, 2018.

_____
**DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**